The panel has before it three cases for argument and two additional cases that are being submitted today without argument on the briefs. Those latter cases are Appeal 2008-3008 Guerrero v. Merit System Protection Board and Appeal 2008-3128 Wolf v. Health and Human Services. On the argument list, we'll hear first argument in Appeal 2007-1417 Huff Systems v. Industrial Dynamics. Mr. Ray, good morning. Welcome to the court. Please proceed. Good morning, Your Honor. May it please the court. We've appealed a conclusory claim construction, a claim construction which flies in the face of the intrinsic evidence of this patent. The patent itself as well as the file history. We believe that the district court should have at least acknowledged and discussed and analyzed the intrinsic file. This file and patent show that with regard to the aspect of the invention that's relevant for this appeal, the invention is a particular angle which causes a stable arrangement of the bottles. What precisely are you depending on in the spec or the prosecution history for that conclusion? Both. The patent is... What's the exact language in each? In each. With regard to the patent, the patent disclosure, for example, the patent itself, and this is very relevant to a means plus function limitation which is also at issue, the patent itself specifically states in the summary of the invention that the angle which brings about the stability or the stable arrangement is about 30 to 100 degrees, preferably 50 to 80 degrees. The patent also continues and refers to this angle as a relatively large angle. That's a column three, lines one and two. Doesn't the summary that you referred to relate to an embodiment, a first embodiment? That is the argument. However, it is particularly with regard to the means plus function. It is the embodiment. It is the only angle discussed with regard to the angled embodiment. The other embodiments don't pertain to the angle at all. So I don't believe the second embodiment which relates to the star wheel, which is not at issue, or the third embodiment which relates to what the patent refers to as a worm is not at issue. But even if that description of the angle is only with respect to that one embodiment and there is no other embodiment disclosed, that doesn't necessarily constrain the full breadth of the invention, does it? That would be correct in the abstract. However, here, number one, we have a means plus function limitation where the case law could not be more clear that all the structural detail must be enunciated in the identification of the corresponding structure. The district court did not do that. Or equivalence. Or equivalence of the structure. It would still be literal infringement. That would be correct. However, equivalence is not before the court. We're not talking about the doctrine of equivalence. We're talking about 112.6, where by definition, equivalent structure is before the court. Is it not? It is not. I meant literal infringement under 112.6. But literal infringement under 112.6 is achieved if the structure is that in the specification or equivalence of that which is in the specification. That is normally correct. In this case, however, equivalence was not tried. That's the doctrine of equivalence, was not tried. No. The equivalence under 112.6 was not tried. And that's a very important point. The plaintiff did not advance an equivalency case before this jury. There was no jury instruction with regard to equivalence. At the charge conference, the judge confronted counsel for Hoyft. And it was agreed that they were not advancing a case under 112.6 equivalence. Because here there is no dispute that the angle in the accused device is 12 or 14 degrees. And therefore, the plaintiff did not advance an equivalency case under 112.6 at all. Not an equivalency case under the doctrine of equivalence or an equivalency case in terms of structural equivalence under 112.6. Correct. So you're saying that probably they couldn't because the numbers were so far apart. If it had been 28 degrees or something, maybe you could say that's an equivalent. But 12 degrees compared to 30 probably would be too far of a stretch. Particularly in light of the file wrapper. The file wrapper is what nails this issue closed. In particular, most importantly, when the limitation in the 408 patent was identical to the limitation at issue in the 974, Hoyft argued to the patent office in distinguishing a reference. And they made this argument several times. But I want to raise two of them, which were not responded to in the briefs by Hoyft. In particular, I... Don't you need to tell us where the jury went wrong, where there was no substantial evidence to support the jury finding on this issue? Well, my first argument, I think the primary argument for this appeal, and the reason why we're appealing, is the claim construction was incorrect. The district court did an erroneous claim construction that should be rectified on this appeal. And you're also arguing, at least implicitly, that under the correct construction, it would have... no reasonable jury could have found infringement. That's correct. Particularly in light of the evidence... It was not a harmless error. It was a consequential error of claim construction, if it was an error at all. Correct. And that is why we really are here. Because there was no remedy given in this case. We are really here to prevent any collateral estoppel effect of this erroneous claim construction. This claim construction... Is there a problem about whether this remains a live case or controversy? And in a certain way of looking at it, you say, well, who cares whether there's a bare infringement finding? There's no injunction. There are no damages. There are no consequences. Does that move the liveness of the controversy between these two parties? No. Why not? Because, one, the collateral estoppel consequences of the claim construction. We have an adverse interest here that I want to rectify. Second of all, the cross appeal does raise whether or not there should have been a remedy, should my appeal get rejected. Is the practical problem that going forward, if you continue to manufacture a product that's identical or that's close enough to be within the infringement finding, there could be a future action in which damages would be at stake or an injunction might be issued? That is a possibility. And for that reason, I believe my client is entitled to prevent this claim construction from having any collateral estoppel consequence. And for that reason, we'd like the claim construction resolved so that we don't need to face this patent ever again trying to cover angles which were expressly and repeatedly disclaimed before the patent office. Okay, now let's get to the repeatedly part. You told us about the line in the summary of the invention and you told us about language at column 3, line 1, about, I think, language or something like relatively large angle. Are there other places in the spec on which you're relying? In the spec? No. Okay, and then in the cross? Well, I shouldn't say that. There is another place in the spec. It's column 5. Can you give us the site? Column 5. Particularly the sentence that begins at line 47. And here the patentee is explaining how the bottle prior to going single file is markedly offset from the bottle that's in the single file. So to be markedly offset, there must be a wide angle to allow that offsetness, so to speak. That's column 5, line 47 through 52. Thank you. So now we're shifting from the spec to prosecution history. The prosecution history is even more clear. Can you be as precise about what exact statements and what communication on what date and so on? I would love to. In particular, appendix 5078, which is not even acknowledged by Hoyft in his responsive brief. In the third paragraph of 5078, it states, Further, in distinguishing a prior art reference, Hoyft argued the present invention provides for the increase and sharp decrease at an angle beta of the distance between the railings creating the stable arrangement. So here, the patent owner is specifically arguing in response to a 102 rejection that the difference between the claimed invention with a limitation identical to the limitation in claim 6 and claim 1, that the gee whiz, the critical aspect of the invention, is the angle beta. And that's at 5078. But they go much further than that. In fact, in another document not acknowledged by Hoyft in the responsive brief, at appendix 5144, page 11 of the specification, they tried to even amend the spec to make it even more clear that the stable arrangement is brought about by a particular angle. Mr. Wright, was this before the jury or not? I'm discussing claim construction, and claim construction was not before the jury. The actual issue of claim construction. However, it did get confusing for the jury because the jury did receive jury instructions under 112 paragraph 6 that were inconsistent with the claim construction. So I'm not sure. Do you object to those instructions? No, the jury instructions were correct on 112 paragraph 6. I offered them and they were accepted by the court as a correct statement of the law under 112 paragraph 6. I'm sorry, I thought you said that they were given inconsistent instructions. Correct, because the claim construction was inconsistent, not the jury instruction on 112 paragraph 6. So the jury was told that the invention is any angle that gives you the function, which is erroneous, and then they were given a jury instruction that said 112 paragraph 6 limitation is limited to the precise structure shown in the specification. So it was the jury instruction that was inconsistent, not the jury instruction on 112 paragraph 6. Remind me when the claim construction was issued. During voir dire. It was handed to the parties during voir dire. And so we've got a separate document that precedes the start of the trial itself. Yes, it's in your back of the blue brief in the joint appendix. The claim construction is at A008. And this contains what you've just referred to about any angle that performs the function? That's exactly what it says. It says that the stabilizing means will be construed to mean, and this is at A008, quote, narrowing the distance between the guide rails at an angle sufficient to interrupt the chaotic behavior of the bottles. Well, that's circular because you're just saying any angle that performs the function. The structure that's shown in the spec is the 30 to 100 degrees. Okay. You were starting to tell us something about a prosecution history estoppel at 5144 when we intervened with questions. So can we go back to that? This was one of the additional parts of prosecution history on which you depend? Yes, Your Honor. Thank you very much. 5144 is the page where Hoyt was amending the specification. And in this, they argued in the inserts, the new aspects that they were adding to the specification states that the critical features are the distance between the railings, and above all, the angle beta at which the distance narrows down in the third area. So here is Hoyt trying to emphasize the angle again to try to overcome the prior art rejection of Christian. Now, the only reason why this specification wasn't ultimately accepted by the examiner is there was no verification that there was no new matter. But this part was not really new matter. The angle had already been specified, but now they're arguing, as they had repeatedly in the file wrapper, arguing the magic of the angle which distinguished the reference. And ultimately, they did distinguish the reference. Is there an argument that we shouldn't rely on that because the proffered amendment was never accepted and therefore the examiner wasn't relying on it? No such argument was made. In fact, this amended specification isn't even acknowledged in the brief of Hoyt. So that argument was never made. Now, were all of the citations to the specification in the prosecution history that you've just recited for us presented to Judge Chiavelli before he issued this voir dire claim construction? That's correct. Yes, and there were many more. In the form of briefs or? He allowed briefing of 10 pages with a responsive briefing of five. He conducted an oral argument. Do we have those briefings in our? I don't believe in their entirety, but sufficient to show that these arguments have not wavered one iota. Is opposing counsel arguing waver in this case to your understanding? No. Okay. No, this was our key argument. Our key argument to simplify the case was simple. A 12 degree or a 14 degree angle in no way would one of ordinary skill in the art read this file history and think that the invention encompasses any angle, including ones as slight as 12 degrees. 12 degrees is just the angle to go from stagger to single file, but the invention was obviously much more specific than that. All right. Thank you. Mr. Young. May it please the court. The judgment of infringement should be affirmed because the district court correctly construed the claims and the jury's verdict was supported by the evidence. Nothing? The one follows from the other, so let's focus on whether the claim construction was correct or not. Is it correct that your responsive brief didn't respond to some of the citations that Mr. Ray has emphasized here? And if that's right, could you respond to them now? Sure. Our responsive brief did address the issues of the claim construction. Of course, claim construction is primarily based on the specification, and the specification here could not be clearer that the claims are not limited to angles greater than 30 degrees. Well, what about the specific citations that he gave us, the summary of invention and column 3, line 1, and so on? Sure. And the top of column 3 says relatively large angles. In preparing for oral argument, I reviewed the geometry that's described in column 5, lines 35 to 38, and I worked through that geometry, and that geometry turns out to disclose an angle of 18 degrees. Now, there's no waiver of that argument because it's based on the specification, which, of course, is in evidence, and it's in support of the district court's claim construction. Now, what about the summary of invention? The summary of invention discloses one embodiment, and it describes an angle of 30 to 100 degrees or preferably 50 to 80. But, of course, that's not limiting, that one embodiment. In some cases, it is limiting what's said in the summary of invention. In other cases, it's not. So you have to help us get to which fork in the road to take in this case. Sure, and in this case, the specification discloses a relatively large angle. The detailed description of the invention describes a configuration that results in an angle of 18 degrees. The claims have no limitation as to the measure of the angle at all. Well, we know that. I mean, the question is whether in these other two ways an angle was woven into it. Of course, it's not in the words of the claim. Nobody disputes that. Sure, but the specification talks, again, about a relatively large angle, and the specification is unlimited as to the measure of that angle. But in terms of what the inventor invented, there has to be some correlation between what the inventor says he invented and what he's allowed to claim. And Mr. Ray's argument seems to suggest that the invention here had as a critical feature an angle somewhere in the range of 30 to 100. And you're saying, no, it didn't, that much smaller angles or maybe even larger angles would be just as good and were just as much a part of what he invented. And there's nothing in the specification that says that the angle of 30 to 100 degrees is critical. But there's quite a bit in the prosecution history, is there not? But the prosecution history was of the parent of the 408 patent. The 974 was a divisional of the 408, and, of course, this court has said that the prosecution history is a relatively poor guide for claim construction. Well, I'm not sure we've said that. I think what we've said is it depends. Sometimes the parent gives you strong guidance on claim construction. Sometimes it gives you very little. Maybe sometimes it gives you none, but it depends on the specifics, not on some general notion. Sure. So in this case, why is the prosecution history to be disregarded? In the prosecution history, there was never an argument about a 30 degree angle. In the prosecution history of the 408, the primary reference was the Christian reference, and Christian didn't disclose an angle of less than 30 degrees. So there would have been no reason to argue about angles of less than 30 degrees. Well, what about the reference at 5078 of the record, paragraph 3, that refers to angle beta? The angle is critical. The angle is the stabilizing means. What's not critical is the measure of that angle, because the measure could vary widely depending upon the variables of the way the bottling line is functioning. How do we know that? Because one of ordinary skill in the art. But what's the evidence? I mean, what's the evidence that widely different angles would work or have been tried and worked? Well, the specification in the prosecution history don't say that the angle is limited. They don't say that the measure of the angle is critical. The prosecution history- Well, what are we supposed to make, then, of the reference to the angle beta? That seems to refer to the parts of the patent that talk about 30 to 100 degrees. Does it not? No, it does not. It refers to the angle, the relatively large angle that's referenced at the top of column 3. And during prosecution, it was emphasized that it's the angle- Is a 5-degree angle a relatively large angle? It could be. How about a 2-degree angle? It could conceivably be. When you say it could be, it's hard to follow that. As a matter of common sense, how could you call a 2-degree angle a relatively large angle? It's an issue for one of ordinary skill in the art. And that issue is not presented- So was there some testimony by ordinary artisans that even a 2-degree angle would fit within the understanding of relatively large angle? There was no testimony about a 2-degree angle, no. Well, was there testimony about 12 degrees or 15 degrees or 20 degrees or any other number substantially lower than 30 degrees? There was testimony by one of the inventors, Mr. Goler, who said that the angle, any measures below 30 degrees could work. It would depend on- But that was a trial, wasn't it? That's right. I'm talking about Markman-relevant testimony, the basis of the claim construction. There was no testimony at the Markman hearing. It was briefed, and there was an argument of counsel. Were there any declarations, depositions, anything presented to the judge on claim construction that he had in front of him as of the time he made his construction? Not that I recall, Your Honor. So the documents and attorney are- That's right. Okay, that helps to get us focused on that. At page 5094 of the appendix, there's a statement in the prosecution of the 408 patent. It says, in an area following the first area, the angle beta of the present invention also produces a more marked change than the gradual reduction between rails as seen in Christian. Christian does not suggest that there are the given advantages provided by angle beta in the area following the first area. And in addition to that statement, ultimately, all of the claims, as I understand in 408, were amended to add specifically this angle 30 to 100 degrees, I believe. Why is that not significant? Well, Your Honor, there were claims in the 408 before that amendment that were directed to 30 to 100 degrees. The claims were amended to add a limitation of 30 to 100 degrees, and the examiner continued to reject the application of all of the claims over the Christian reference, notwithstanding that amendment. So that's why this court has said that the prosecution history, which represents a long negotiation between the inventor and the patent office, is oftentimes a poor guide for claim construction. There was no clear and unmistakable disavowal of claim scope during prosecution of the 408 patent that can be read into the 974 patent. There was no mention of that 30 degree angle. And when you look at the drawing of the Christian reference, which is at A004904, this was the primary drawing that the examiner and the applicant's attorney were looking at, what the applicant's attorney was struggling with, as is apparent from the prosecution history, was the difference in the configuration of Christian. Christian was not directed to inspection. Christian was directed to the filing of bottles. What's the citation again, please? It's A004904. And when you look at that drawing, it lends meaning to the characterization of applicant's counsel. Applicant's counsel said that the guide rails smoothly bend, that there's a gradual reduction, a gradual and asymmetrical reduction. And of course, the guide rails begin separated by four bottles apart. And what was critical and emphasized during prosecution of the 408 was that the rails are only 1.2 times the diameter of the bottle apart. And so the applicant's attorney was struggling to distinguish this geometry, not the angle, because arguing the angle would have been ineffective. What he was arguing was the difference in the geometry, the smoothly bending. And he characterized this as it's not really an angle. I mean, one would be hard pressed to say that this forms an angle. Jerry, why did he say anything about angles? It would seem like he wouldn't need to, and that perhaps it was a mistake that he did, because he didn't need to. He characterized the geometry of the claimed invention as forming an angle. And he said that angle was critical. He never characterized the geometry of the Christian reference as being an angle. He talked about the guide rails smoothly bending and a gradual reduction in the space between the guide rails. I must not be following you, because the logic of what you just said seems to me to suggest that he could distinguish Christian without ever talking about angles. But he did talk about angles. And even if he didn't need to, if he did, then normally that would form part of what we presume the examiner relied on. And that competitors would rely on in reviewing the prosecution history in order to be able to construe the claims and know whether they're infringing or not. The whole importance of the public notice of claim interpretation so everybody else knows what they're allowed to do lawfully and what they're not allowed to do. With all due respect, Your Honor, he did not argue the measure of the angle. He did not argue that the measure of the angle was a patentable distinction, nor would it have been effective to do so. Because as the examiner said, the guide rails of Christian converge at an angle of 30 to 100 degrees. And he never disputed that, and he never argued over that, and he never did anything to try to differentiate Christian based on the measure of the angle. If I'm following you correctly, then he shouldn't have said anything about angles at all in all of his communications with the examiner. I must be missing something. You've got to help me here. The geometrical shape that's in the drawings of the 974 patent show an angle. He even drew an angle onto the drawings of the 974 patent showing the angle. And it was that shape that he argued was a critical distinction over Christian. Christian had no geometric shape of an angle. And so that's why he argued that the angle was a critical distinction over Christian. It's the geometric shape. It's not the measure of the angle. All right. Other points? If I may, I'd like to turn to the issue of damages. Because in this case, although Hoyst won on infringement below, it was accorded no remedy, no injunction, and no damages. The district court impermissibly weighed the facts in the underlying facts of Hoyst's damages expert when it struck her testimony. It resolved IDC's own poor accounting records against Hoyst in determining that Hoyst's expert- Look, irony is not a criterion of our review of exclusion rulings by the district judge. We have to review it for abuse of discretion. So you have to convince us there was a clear abuse of discretion here. Well, this court has said that when the defendant's own accounting records are insufficient to determine profits, that those accounting records, those uncertainties should be resolved against the infringer. And the district court judge didn't do that here. The district court weighed the facts himself, concluded that he thought that the bill of materials- Acknowledged that it appeared to come from their own computer system. Acknowledged that they were produced by the defendant. What do you think? She authenticated it as accurate and reliable? I thought her testimony was the opposite. She said she never saw it before and wasn't sure what it was. That's right. She ran from it. She refused to authenticate it. She refused to acknowledge that it was accurate. And that was the issue, was whether it was accurate or not. And instead, the defendant sought to impose their average profit in this case, to insist that all hoists could recover in damages was damages based upon their average profit. Yeah, but the issue before us is whether her testimony is correctly stricken or not under abuse of discretion review. That's right. And under Rule 7- What the witness said is irrelevant, in a sense. The only question is whether her testimony had to be left before the jury and not stricken and the issue taken away from the jury as it was. That's right. And Rule 7-02 says that an expert opinion has to be based on sufficient facts, proper principles and methods, and proper application of those principles and methods to the facts. And what the judge did here, what Judge Gigabelli did here, was he weighed the facts himself. He weighed the bill of materials himself. I don't understand what you mean he weighted himself. He has to decide whether there's an adequate foundation to allow all of the inferences being drawn by the expert witness. And he seems to have concluded that the foundation was not adequate, so he ordered all of her testimony stricken. So when you say he weighed the facts as if that's illegal or something, well, he has to do that because he has to decide whether the foundation is adequate or not adequate. The weighing of the facts is for the jury. That is not part of the gatekeeper function of the district court in reviewing the expert testimony. The weighing of the underlying facts on which the expert relies is properly a function for the jury, not for the district court, and that's what we're saying. But how is the judge to ever make a determination as to the adequacy of the foundation for expert testimony? It is not for the judge to decide whether there are adequate facts, only that there are facts upon which the expert can rely. And here there were. The facts were the bill of materials. When you have a document and the document is the foundation of the expert's opinion statements, how can the judge assess the adequacy under the rules of evidence in the case law of that foundation without looking into the authentication and the content of the document? Of course it's for the jury in the final analysis to weigh the probative force of it and whether to rely on it and how much and all that. But isn't there a threshold requirement and permission for a judge to make a determination as to whether that document is an adequate foundation for the testimony that the expert intends to base on? Not under Rule 702, Your Honor. Under Rule 702, an expert is entitled to rely on documents that are not in evidence, documents that are- I didn't say that. It wasn't a question of whether they're in evidence or not, but they have to be reliable enough. That is not for the district court judge to decide. That is a weighing of the facts that is properly for the jury to determine. But do I understand correctly that these were documents that were produced by the defendant? That is correct, Your Honor. And because this is an evidentiary issue, not unique to patent law, the law of the Ninth Circuit governs. And in the Ninth Circuit, in the MGM versus Grokster case that we cite in our brief, the Ninth Circuit says that where a document is produced, that it is admissible against that party. And so on that basis, the document should have come in. It should have been admitted. It should have been considered authenticated. All right. Thank you. Mr. Ray, you have a little bit of rebuttal left. Not very much. We'll give you up to two minutes. Thank you, Your Honor. I'll be very brief. The argument about Hoyf not distinguishing Christensen based on the angle is a new argument, never made before. The argument about 18 degrees, that was the first time 18 degrees has ever been mentioned in this case, that's also a new argument. The question with regard to was there any testimony at the claim construction hearing, the answer is yes. I believe Mr. Young might have forgotten that the inventor himself testified, and this was presented in our claim construction brief, which is in the joint appendix at A797, Mr. Goeller, the named inventor, and it's specifically argued on line 6, he testified that guide rails having angles less than 30 degrees tended to result in bottle instability, as in the case of a normal prior art guide rail. That was presented at the Markman. It was also presented at the trial. And so this testimony from the inventor was directly on point, that angles less than 30 degrees did not work. And with that, I think the record is clear that there was a disclaimer, and all the evidence shows that angle beta has to be 30 degrees. All right. We thank both counsel for a very clear, forceful presentation. We'll take the appeal under advisement.